## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **FERROSTAAL METALS GMBH and VNSTEEL-PHU MY FLAT STEEL CO., LTD.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **NUCOR CORPORATION, UNITED STATES STEEL CORPORATION, ARCELOR MITTAL USA LLC, STEEL DYNAMICS, INC., CALIFORNIA STEEL INDUSTRIES**, <br><br> Defendant-Intervenors. | **Before: Timothy M. Reif, Judge** <br><br> **Court No. 20-00018** |

## <u>OPINION</u>

[Judgment sustaining the U.S. Department of Commerce Final Determination will be entered.]

Dated: <u>May 4, 2021</u>

    <u>Donald B. Cameron</u>, Morris, Manning and Martin LLP, of Washington, DC, argued for plaintiffs.  With him on the brief were <u>Julie C. Mendoza</u>, <u>R. Will Planert</u>, <u>Brady W. Mills</u>, <u>Mary S. Hodgins</u>, <u>William H. Barringer</u>, <u>Eugene Degnan</u>, <u>Sabahat Chaudhary</u>, <u>Edward J. Thomas III</u> and <u>Jordan L. Fleischer</u>.

    <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With her on the brief were <u>Ethan P. Davis</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Elizabeth Speck</u>, Senior Trial Counsel.  Of counsel on the brief was <u>Brendan Saslow</u>, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

        <u>Theodore P. Brackemyre</u>, Wiley Rein LLP, of Washington, DC, argued for
defendant-intervenor Nucor Corporation.  On the brief were <u>Alan H. Price</u>, <u>Christopher</u>
<u>B. Weld</u>, and <u>Tessa V. Capeloto</u>, Wiley Rein LLP, of Washington, DC; <u>Thomas M.</u>
<u>Beline</u>, <u>Jeffrey B. Denning</u>, <u>Sarah E. Schulman</u>, and <u>Chase J. Dunn</u>, Cassidy Levy Kent
(USA) LLP, of Washington, DC, for defendant-intervenor United States Steel
Corporation; <u>Paul C. Rosenthal</u>, <u>R. Alan Luberda</u> and <u>Joshua Morey</u>, Kelley Drye and
Warren LLP, of Washington, DC, for defendant-intervenor Arcelor Mittal USA LLC; and
<u>Roger B. Schagrin</u> and <u>Christopher Cloutier</u>, Schagrin Associates, of Washington, DC,
for defendant-intervenor Steel Dynamics, Inc.

        Reif, Judge: This action involves the final affirmative determination of

circumvention by the U.S. Department of Commerce ("Commerce") of the antidumping

duty and countervailing duty orders (collectively, "CRS Orders") covering certain cold-

rolled steel flat products ("CRS") from the Republic of Korea ("Korea").  *See Certain*

*Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Final*

*Determinations of Circumvention of the Antidumping Duty and Countervailing Duty*

*Orders*, 84 Fed. Reg. 70,934 (Dep't Commerce Dec. 26, 2019) ("Final Determination");

*see also* the accompanying Issues and Decision Memorandum (Dep't Commerce Dec.

13, 2019) ("IDM").

        Before the court is a USCIT Rule 56.2 motion for judgment on the agency record

filed by plaintiffs Ferrostaal Metals Gmbh and Vnsteel-Phu My Flat Steel Co., Ltd.

("PMF").[1]  Plaintiffs challenge the Final Determination and argue that: (1) the rejection of

PMF's responses to the quantity and value ("Q&V") questionnaire was not in

accordance with law and an abuse of discretion; and, (2) application of adverse facts

---

[1] Ferrostaal Metals Gmbh is an importer of the merchandise produced by PMF.  Pls.' Br.
in Supp. of Mot. J. Agency R., ECF No. 48 ("Pl. Br.") at 18.

available ("AFA") to determine that PMF was unable to trace its inputs was not

supported by substantial evidence and was not in accordance with law.  Pls.' Br. in

Supp. of Mot. J. Agency R., ECF No. 48 ("Pl. Br.") at 11-12.

This court has jurisdiction pursuant to sections 516A(a)(2)(A)(ii) and

516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(ii)

(2018) and 19 U.S.C. § 1516a(a)(2)(B)(vi) (2018),[2] and 28 U.S.C. § 1581(c) (2018).  For

the reasons set forth below, the court sustains the Final Determination.

## BACKGROUND

### I.      Anti-Circumvention Inquiries

Dumping occurs when a foreign company sells a product in the United States for

a price that is lower than the cost of production or lower than the price at which the

company sells the product in its home market.  *See Sioux Honey Ass'n v. Hartford Fire

Ins. Co.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012); *see also* 19 U.S.C. § 1677(34).  A

countervailable subsidy exists when "a foreign government provides a financial

contribution, a benefit is thereby conferred, and the subsidy is specific."  *POSCO v.

United States*, 42 CIT __, __, 353 F. Supp. 3d 1357, 1363 (2018); *see also* 19 U.S.C. §

1677(5).

Congress enacted the Tariff Act of 1930 ("Tariff Act") to empower Commerce and

the U.S. International Trade Commission ("Commission") to address imports that are

dumped or that benefit from countervailable subsidies and that cause injury to a

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of
Title 19 of the U.S. Code, 2018 edition.

domestic industry. *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 913 (Fed. Cir. 2019). Commerce typically opens an antidumping or countervailing duty investigation in response to a petition filed by a domestic industry. *Id*. If Commerce determines that imports subject to investigation have been dumped or have received countervailable subsidies and the Commission determines that those imports have injured a domestic industry producing the like product, "Commerce must issue an order imposing countervailing or antidumping duties." *Id*.

In an anti-circumvention inquiry, Commerce determines "whether a product outside an order's literal scope should nevertheless be included within the scope to prevent circumvention of antidumping and countervailing duty orders pursuant to statutory criteria . . . and regulatory criteria . . . ." *U.K. Carbon & Graphite Co. v. United States*, 37 CIT 1295, 1300, 931 F. Supp. 2d 1322, 1328 (2013). When imported merchandise is completed or assembled in a third country other than the country named in the antidumping or countervailing duty order, Commerce may determine that the merchandise is circumventing the order if, "before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which — (i) is subject to such order or finding, or (ii) is produced in the foreign country with respect to which such order or finding applies."[3] 19 U.S.C. § 1677j(b)(1)(B). Commerce must further determine that the "process of assembly or

---

[3] "Order or finding" refers to an antidumping order issued under 19 U.S.C. § 1673e, a finding issued under the Antidumping Act of 1921, or a countervailing duty order issued under 19 U.S.C. § 1671e or 19 U.S.C. § 1303. 19 U.S.C. § 1677j(b)(1)(A).

completion in the foreign country . . . is minor or insignificant" and that "the value of the merchandise produced in the foreign country . . . is a significant portion of the total value of the merchandise exported to the United States." 19 U.S.C. § 1677j(b)(1)(C)-(D); *see also Macao Commer. & Indus. Spring Mattress Mfr. v. United States*, 44 CIT __, __, 437 F. Supp. 3d 1324, 1333 (2020).

## II.    Relevant Facts

On July 25, 2016, Commerce issued the CRS Orders on CRS from Korea. *See Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Affirmative Preliminary Determination of Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 32,875 (Dep't Commerce July 10, 2019) ("Preliminary Determination"); *see also* the accompanying Preliminary Decision Memorandum (Dep't Commerce June 28, 2019) ("PDM") at 1. On June 12, 2018, ArcelorMittal USA LLC, United States Steel Corporation, California Steel Industries, Nucor Corporation and Steel Dynamics, Inc. filed submissions alleging that CRS produced in Vietnam using Korean hot-rolled steel ("HRS") was circumventing the CRS Orders. PDM at 2, n.5. On August 2, 2018, Commerce initiated anti-circumvention inquiries of the CRS Orders "covering Korean-origin HRS exported to Vietnam for completion into CRS and subsequently exported to the United States." *Id*.

On October 5, 2018, Commerce issued Q&V questionnaires to 31 Vietnamese producers and exporters of CRS that Commerce identified as potential respondents. *Id*. at 3. The Q&V questionnaire asked for the total quantity of "cold-rolled coil purchased during the period November 1, 2016, through August 31, 2018, from all sources, and

separately, from the Republic of Korea."  Commerce's Q&V Questionnaire, PD 17 (Oct.

5, 2018).  The Q&V questionnaire did not ask specifically about "the source of the

substrate used in production or whether producers could trace substrates used in their

production process."  Pl. Br. at 3; *see also* Commerce's Q&V Questionnaire, PD 17

(Oct. 5, 2018).  The Q&V questionnaire stated in bold that a "failure to provide accurate

information or to cooperate to the best of your ability may result in [Commerce] resorting

to the use of facts available and adverse inferences within the meaning of section 776

of the Tariff Act of 1930."  Commerce's Q&V Questionnaire, PD 17 (Oct. 5, 2018).

On October 19, 2018, PMF submitted its response to the Q&V questionnaire

("original Q&V response").  IDM at 12; *see also* PMF's Rejected Q&V Questionnaire

Response, PD 33 (Oct. 19, 2018).  On December 14, 2018, Commerce rejected PMF's

original Q&V response due to filing deficiencies.  Commerce Request for Revised Q&V

Questionnaire Response at 1, PD 58 (Dec. 14, 2018).  Commerce explained in its

notice to PMF that the original Q&V response was rejected, and, therefore, not placed

on the record, because PMF failed to indicate appropriately and explain business

proprietary information ("BPI") in accordance with 19 C.F.R. §§ 351.303(b)(4),

351.303(d)(2)(v) and 351.304(b)(1)(i).  *Id.*  Commerce provided PMF with an opportunity

to revise its original Q&V response and set the deadline for December 19, 2018.  *Id*.

Commerce also provided instructions to PMF on how to request an extension of time,

should PMF need more time to prepare the revised Q&V response.  *Id*.

On December 28, 2018, PMF submitted its revised Q&V response ("revised Q&V

response"), nine days after the deadline and without an explanation for the delay.  IDM

at 12.  As plaintiffs note in their brief, "the underlying data was [sic] unchanged, but the [revised Q&V] response explained why [PMF's] specific quantity and value figures were business proprietary."  Pl. Br. at 5.  On March 4, 2019, Commerce rejected the revised Q&V response as "untimely filed" in accordance with 19 C.F.R. § 351.301(c)(1) and 19 C.F.R. § 351.104(a)(1)(iii).  Commerce's Rejection of Revised Q&V Questionnaire Response at 1, PD 82 (Mar. 4, 2019); *see also* IDM at 15.

On March 26, 2019, Commerce selected China Steel Sumikin Vietnam Joint Stock Company and POSCO Vietnam Co., Ltd. as the mandatory respondents in the anti-circumvention inquiry.  Commerce's Respondent Selection Memorandum at 2, PD 90 (Mar. 26, 2019).  On July 10, 2019, Commerce preliminarily determined that CRS imports into the United States, completed in Vietnam from HRS sourced from Korea, were circumventing the CRS Orders.  Preliminary Determination.

Commerce also stated in its PDM that, of the 31 companies to which Q&V questionnaires were sent, 25 companies did not respond or did not respond in a timely manner — including PMF.  *Id*. at 4.  Commerce collectively referred to the 25 companies as "the non-responsive companies."  *Id*.  Commerce determined that it needed to rely on facts otherwise available for the non-responsive companies pursuant to 19 U.S.C. § 1677e(a) because necessary information was missing from the record. *Id*. at 12.  Commerce also determined that the non-responsive companies did not act to the best of their ability to comply with Commerce's requests and, therefore, that the application of AFA was appropriate pursuant to 19 U.S.C. § 1677e(b).  *Id.*

Relying on its application of AFA, Commerce preliminarily determined that the non-responsive companies were using "CRS made from Korean-origin sourced substrate that are [sic] completed in Vietnam and then exported to the United States" in circumvention of the CRS Orders.  *Id*. at 13.  As a result, Commerce preliminarily determined that the non-responsive companies, including PMF, were precluded from participating in the Korean certification process.  *Id*.  As such, PMF was not provided an opportunity to certify that its "HRS substrate further processed into CRS in Vietnam did not originate in Korea."  *See id*. at 8.

On August 19, 2019, PMF submitted a letter to Commerce requesting that Commerce use its discretion and accept the Q&V response[4] so that PMF could participate in the certification process.  Phu My Flat's Clarification Letter, PD 197-199 (Aug. 19, 2019); *see also* Pl. Br. at 7.  In this letter, PMF — for the first time in the nearly eight months since submitting its revised Q&V response — notified Commerce as to the reason that the revised Q&V response was nine days late.  *Id*.  PMF stated that its submission "failed because of [sic] unknown transferring error at the time of sending" and explained that when PMF found this error, it submitted its response again.[5]  *Id*.

On December 26, 2019, Commerce issued its Final Determination, which, consistent with the Preliminary Determination, concluded that "there was circumvention

---

[4] In the letter, PMF did not specify whether PMF was asking Commerce to accept the original Q&V response or the revised Q&V response.  Phu My Flat's Clarification Letter, PD 197-199 (Aug. 19, 2019).

[5] PMF's error is unsubstantiated in the record before the court.

of the *CRS Orders* as a result of Korean-origin HRS being completed into CRS in Vietnam and exported to the United States." IDM at 11. Additionally, Commerce continued to apply AFA to the non-responsive companies, including PMF, and excluded the non-responsive companies from the certification process. *Id.* at 19. On January 24, 2020, plaintiffs brought this action against the United States ("Government" or "defendant") before the court to challenge the results of the Final Determination. Compl., ECF No. 11 at 2; Pl. Br. at 1.

## STANDARD OF REVIEW

In reviewing a final affirmative circumvention determination by Commerce, the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Deacero S.A. de C.V. v. United States*, 37 CIT 1437, 1460, 942 F. Supp. 2d 1321, 1325 (2013). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite showing amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote omitted) (internal quotation marks omitted).

To review the reasonableness of agency action, "courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube*

*Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *WelCom Prods. v. United States,* 36 CIT 1336, 1341, 865 F. Supp. 2d 1340, 1344 (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

## Commerce's Rejection of Phu My Flat's Quantity and Value (Q&V) Responses

### LEGAL FRAMEWORK

The conduct of investigations and administrative reviews is governed by 19 U.S.C. § 1677m. *See* 19 U.S.C. § 1677m. In particular, 19 U.S.C. § 1677m(d) ("section 1677m(d)") governs the conduct by Commerce in the event of a deficient submission from a respondent. 19 U.S.C. § 1677m(d). If Commerce determines that a submission is deficient, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits . . . ." *Id*. Additionally, if the respondent submits further information that Commerce finds is "not satisfactory" or "such response is not submitted within the applicable time limits . . . [Commerce] may, subject to subsection (e), disregard all or part of the original and subsequent responses." *Id*.

19 U.S.C. § 1677m(e) ("section 1677m(e)") controls the "use of certain information" by Commerce in reaching a determination. 19 U.S.C. § 1677m(e). Commerce "shall not decline to consider information that is submitted by an interested

party and is necessary to the determination but does not meet all the applicable

requirements established by [Commerce]" provided that five conditions are met.  *Id*.

The five conditions as stated in section 1677m(e) are:

> (1) the information is submitted by the deadline established for its submission,

> (2) the information can be verified,

> (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

> (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce] with respect to the information, and

> (5) the information can be used without undue difficulties.

*Id*.  Further, the Uruguay Round Agreements Act, Statement of Administrative Action

("SAA")[6] states that "[t]he agencies will be required, consistent with new section 782(e),

to consider information requested from interested parties that: (1) is on the record; (2)

was filed within the applicable deadlines; and (3) can be verified."[7]  SAA, H.R. Doc.  No.

103-316, vol. 1, at 869 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4,040, 4,198.

The Supreme Court has ruled that "[t]he function of filling in the interstices of [a

law] should be performed, as much as possible, through this quasi-legislative

promulgation of rules to be applied in the future."  *SEC v. Chenery Corp*., 332 U.S. 194,

---

[6] "The statement of administrative action approved by the Congress under section 101(a) [19 U.S.C. § 3511(a)] shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d).

[7] Section 782(e) of the Tariff Act of 1930 is codified at 19 U.S.C. § 1677m(e).

202 (1947).  The authority of Commerce to create regulations extends to the creation of

regulations governing the procedure for conducting anti-circumvention inquiries.  *See*

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543

(1978) ("[a]bsent constitutional constraints or extremely compelling circumstances the

administrative agencies should be free to fashion their own rules of procedure and to

pursue methods of inquiry capable of permitting them to discharge their multitudinous

duties." (citations omitted) (internal quotation marks omitted)).  This authority includes

the ability of Commerce to promulgate regulations governing the development of the

agency record.  *See PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760

(Fed. Cir. 2012) ("[a]ccordingly, absent such constraints or circumstances, courts will

defer to the judgment of an agency regarding the development of the agency record.").

Further, "[i]t is fully within Commerce's discretion to 'set and enforce deadlines' and [a]

court 'cannot set aside application of a proper administrative procedure because it

believes that properly excluded evidence would yield a more accurate result if the

evidence were considered.'"  *Dongtai Peak Honey Indus. v. United States*, 777 F.3d

1343, 1351 (Fed. Cir. 2015) (quoting *PSC VSMPO-Avisma*, 688 F.3d at 760–61).

## DISCUSSION

Plaintiffs challenge the rejection of the Q&V responses by Commerce through

two overarching arguments.  First, plaintiffs argue that Commerce failed to follow

sections 1677m(d) and 1677m(e) and, therefore, that Commerce's rejection of the

original Q&V response was not in accordance with law.  Reply Br. of Pls. in Supp. of

Mot. J. Agency R., ECF No. 54 ("Pl. Reply Br.") at 3.  Second, plaintiffs argue that

Commerce abused its discretion in rejecting, respectively, the original Q&V response and the revised Q&V response.  Pl. Br. at 11.

Commerce's rejection of the original Q&V response was in accordance with sections 1677(d) and 1677m(e).  Further, Commerce's rejections, respectively, of the original Q&V response and the revised Q&V response were consistent with the Commerce regulations and were not an abuse of discretion.

I.    **Whether Commerce's Rejection of the Original Q&V Response Was in Accordance with 19 U.S.C. §§ 1677m(d) and (e)**

Plaintiffs make three supporting arguments that Commerce's rejection of the original Q&V response was not in accordance with sections 1677m(d) and 1677m(e).  First, plaintiffs make a temporal argument that Commerce was authorized by section 1677m(d) to reject the original Q&V response only after Commerce conducted an analysis under section 1677m(e).  *See* Pl. Reply Br. at 3.  Plaintiffs base this argument on the following premise — that Commerce "may only disregard *both the original and subsequent submissions* if it has first conducted an analysis under section 782(e), 19 U.S.C. [§] 1677m(e)."  Pl. Reply Br. at 3 (emphasis in original).

Plaintiffs' premise — and reading of section 1677m(d) — are incorrect.  The language on which plaintiffs seek to rely follows the conditional language — "*If* that person submits further information in response to such deficiency. . . ."  19 U.S.C. § 1677m(d) (emphasis supplied).[8]  If, as here, plaintiffs submitted no further information,

---

[8] Plaintiffs' use of the word "only" is not found in the statute.  The statute provides as follows:

the statute, by its clear terms, does not require Commerce to consider such information since none has been provided.

The purpose of section 1677m(d) is to provide a party that submitted a deficient response with an opportunity to correct the "deficiency," to the extent practicable. *See* 19 U.S.C. § 1677m(d). Section 1677m(d) does not proscribe Commerce from rejecting an original response before Commerce receives a subsequent response. Nor does section 1677m(d) require that Commerce analyze section 1677m(e) before Commerce acts under section 1677m(d).

Second, plaintiffs argue that PMF's original Q&V response met the five criteria under section 1677m(e) and, as such, should have been considered notwithstanding that the original Q&V response did not meet the BPI requirements. Pl. Reply Br. at 4. The court disagrees. The submission failed to meet the fourth criterion — PMF failed to "demonstrate[] that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority . . . ." 19 U.S.C. § 1677m(e)(4). Commerce reviewed section 1677m(e)(4) and determined "that these non-responsive companies did not cooperate to the best of their ability by failing to

_____

If that person submits further information in response to such deficiency and either — (1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or (2) such response is not submitted within the applicable time limits, then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d).

provide the requested information."  PDM at 13.  The record supports Commerce's

determination that PMF did not act to the best of its ability.  *See* Commerce Request for

Revised Q&V Questionnaire Response at 1, PD 58 (Dec. 14, 2018) (stating that

Commerce was giving PMF an opportunity to revise and resubmit its original Q&V

response to correct its deficiency).  PMF missed the deadline that Commerce set for the

submission of the revised Q&V response and, when PMF submitted its revised Q&V

response past the deadline, PMF did not offer an explanation.  IDM at 15.  In sum,

Commerce's determination that the original Q&V response did not meet the

requirements of section 1677m(e) was reasonable.

The third argument that plaintiffs present is that Commerce regulations — 19

C.F.R. §§ 351.104(a)(2)(i) and (ii) ("section 351.104(a)(2)") — which permitted

Commerce to reject from the record and yet retain the original Q&V response, are not in

accordance with 19 U.S.C. §§ 1677m(d) and (e).  *See* Transcript of Oral Argument at 6,

¶¶ 7-13, ECF No. 68 ("Tr."); Tr. at 7, ¶¶ 12-15.  Plaintiffs assert that sections 1677m(d)

and 1677m(e) require Commerce to consider information submitted by a respondent if it

meets the five criteria of section 1677m(e), even if that information was rejected from

the record but retained for purposes of documenting its rejection from the record.  Pl.

Reply Br. at 4-5.  To support their position, plaintiffs direct the court to the SAA, which

states that "[t]he agencies will be required, consistent with new section 782(e), to

consider information requested from interested parties that: (1) is on the record; (2) was

filed within the applicable deadlines; and (3) can be verified."  *Id*. at 5 (citing SAA, H.R.

Doc. No. 103-316, vol. 1, at 869 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4198)

(emphasis omitted).  Plaintiffs argue that the SAA "contemplates these precise circumstances, i.e., where requested information is not available on the record, [and that] Commerce must consider record evidence that was rejected but retained."  *Id*. at 4-5.

Defendant disagrees with plaintiffs' reading of the SAA and characterizes the relevant text from the SAA as a "generic description of how Commerce is supposed to rely on facts available that are on the record."  Recording of Oral Argument at 6:14-6:20.[9]  Defendant asserts that the relevant section of the SAA is silent on how Commerce is to treat information that is retained.  Tr. at 7, ¶¶ 20-22.  Therefore, defendant argues that Commerce's regulation establishing a rejected but retained procedure for the official record is not contrary to the statute.  Tr. at 8, ¶¶ 20-24.

The court agrees.  Section 351.104(a)(2) provides that Commerce "will not use factual information, written argument, or other material that [Commerce] rejects," 19 C.F.R. § 351.104(a)(2)(i) (2011), and that "[t]he official record will include a copy of a rejected document, solely for purposes of establishing and documenting the basis for rejecting the document, if the document was rejected because . . . the submitter made a nonconforming request for business proprietary treatment of factual information (see § 351.304) . . . ."  19 C.F.R. § 351.104(a)(2)(ii).

---

[9] Citations to the oral argument are to the transcript except for instances in which the transcript is inaccurate.  The transcript states: "it's a pretty generic description of how Commerce is supposed to rely, in fact, available.  That's on the record."  Transcript of Oral Argument, ECF No. 68 ("Tr.") at 7, ¶¶ 22-24.

Commerce has the authority to promulgate regulations, including regulations governing the development of the agency record.  *See PSC VSMPO-Avisma*, 688 F.3d at 760.  "The Court need consider only whether the regulation is based on a permissible construction of the statute."  *Hoogovens Staal BV v. United States*, 22 CIT 139, 141, 4 F. Supp. 2d 1213, 1216 (1998) (citing *Melamine Chem., Inc. v. United States* 732 F.2d 924, 928 (Fed. Cir. 1983)).  It is a permissible construction of the statute that Commerce is required to consider deficient documents under sections 1677m(d) and 1677m(e) only if those documents are (1) placed on the record and (2) not retained solely for the purpose of referencing the reason that a document was rejected.  As a consequence, Commerce regulations — sections 351.104(a)(2)(i) and 351.104(a)(2)(ii) — are consistent with sections 1677m(d) and 1677m(e).

In sum, Commerce's rejection of the original Q&V response was in accordance with 19 U.S.C. §§ 1677m(d) and (e).

## II.      Whether Commerce's Rejection of the Q&V Responses Was in Accordance with Its Regulations and Whether It Was an Abuse of Discretion

Plaintiffs assert that the rejection by Commerce of the original Q&V response in October 2018 and the revised Q&V response in December 2018 was an abuse of discretion.  Pl. Br. at 11.  Plaintiffs do not argue that Commerce did not have discretion under the statute and its regulations to reject the Q&V responses, only that Commerce had discretion and should have exercised its discretion favorably to accept PMF's submissions.  *See* Pl. Reply Br. at 16.  The court concludes that Commerce did not abuse its discretion in rejecting both the original and revised Q&V responses.

Plaintiffs argue that Commerce abused its discretion when it rejected PMF's

original Q&V response for "purely technical procedural reasons." Pl. Br. at 11. As

noted, Commerce rejected PMF's original Q&V response because PMF failed to

indicate appropriately and explain BPI in accordance with 19 C.F.R. §§ 351.303(b)(4),[10]

351.303(d)(2)(v)[11] and 351.304(b)(1)(i).[12] Commerce Request for Revised Q&V

---

[10] "Each document must be clearly identified as one of the following five document classifications and must conform with the requirements under paragraph (d)(2) of this section. Business proprietary document or business proprietary/APO version, as applicable, means a document or a version of a document containing information for which a person claims business proprietary treatment under § 351.304." 19 C.F.R. § 351.303(b)(4) (2020).

[11] "On the fifth and subsequent lines, indicate whether any portion of the document contains business proprietary information and, if so, list the applicable page numbers and state either: 'Business Proprietary Document—May Be Released Under APO,' 'Business Proprietary Document—May Not Be Released Under APO,' or 'Business Proprietary/APO Version—May Be Released Under APO,' as applicable, and consistent with § 351.303(b)(4). Indicate 'Business Proprietary Treatment Requested' on the top of each page containing business proprietary information. In addition, include the warning 'Bracketing of Business Proprietary Information Is Not Final for One Business Day After Date of Filing' on the top of each page containing business proprietary information in the business proprietary document filed under paragraph (c)(2)(i) of this section (one-day lag rule). Do not include this warning in the final business proprietary document filed on the next business day under paragraph (c)(2)(ii) of this section (see § 351.303(c)(2) and § 351.304(c)) . . . ." 19 C.F.R. § 351.303(d)(2)(v).

[12] "A person submitting information must identify the information for which it claims business proprietary treatment by enclosing the information within single brackets. The submitting person must provide with the information an explanation of why each item of bracketed information is entitled to business proprietary treatment. A person submitting a request for business proprietary treatment also must include an agreement to permit disclosure under an administrative protective order, unless the submitting party claims that there is a clear and compelling need to withhold the information from disclosure under an administrative protective order." 19 C.F.R. § 351.304(b)(1)(i).

Questionnaire Response at 1, PD 58 (Dec. 14, 2018).  Commerce regulations instruct it

to reject submissions that do not comply with the procedures for submitting responses

with BPI: "The Secretary *will reject* a submission that does not meet the requirements of

section 777(b) of the Act and this section with a written explanation."[13]  19 C.F.R. §

351.304(d)(1) (2011) (emphasis supplied).

As to the revised Q&V response that PMF submitted nine days late, plaintiffs

argue that Commerce "should have exercised its discretion to extend Phu My Flat's

deadline" and that "its refusal to do so was an abuse of discretion . . . . "  Pl. Br. at 11.

However, Commerce regulations expressly provide that Commerce shall reject an

untimely response.  *See* 19 C.F.R. § 351.301(c)(1) (2013).  In particular, 19 C.F.R. §

351.301(c)(1) states explicitly that "[t]he Secretary *will not consider* or retain in the

official record of the proceeding . . . untimely filed questionnaire responses."  *Id.*

(emphasis supplied).

Plaintiffs argue that Commerce could have extended PMF's deadline for good

cause.  Pl. Reply Br. at 14-15.  19 C.F.R. § 351.302(b) states that "the Secretary may,

for good cause, extend any time limit established by this part."  19 C.F.R. § 351.302(b).

Indeed, "Commerce may extend a time limit for 'good cause' on its own."  *Neo Solar*

*Power Corp. v. United States*, 40 CIT __, __, 190 F. Supp. 3d 1255, 1260 (2016) (citing

19 C.F.R. § 351.302(b)).  A party may also request an extension of a time limit for good

---

[13] Section 777(b) of the Tariff Act of 1930 is codified at 19 U.S.C. § 1677f(b).

cause before the time limit expires, or after the time limit expires if the party

demonstrates that an extraordinary circumstance exists.  19 C.F.R. §§ 351.302(a)-(c).

Plaintiffs did not request an extension at any point during the proceeding.[14]  Tr. at

13, ¶¶ 14-15.  Plaintiffs' argument, therefore, "must be taken as asserting that

Commerce's failure to extend the deadline for interested parties to submit [a revised

Q&V response] on its own amounted to an abuse of discretion."  *Tri Union Frozen*

*Prods., Inc. v. United States*, 40 CIT __, __, 163 F. Supp. 3d 1255, 1293 (2016).  In *Tri*

*Union*, in which the party also failed to request an extension of time, the court stated,

"[i]t is hard to think of a reason why Commerce should be expected to *sua sponte* grant

an extension of its deadlines given this context when [the party] itself did not ask for

one."  *Id*. (emphasis in original).  This court too cannot think of a reason that Commerce

should be expected, given the context, to extend its deadline when PMF did not ask for

an extension.

Plaintiffs also ask the court to "weigh[ ] the interests of accuracy and fairness

against any burden placed on Commerce and its interest in finality" in determining

whether it was reasonable for Commerce to reject a submission on a procedural basis

in this case.  Pl. Br. at 14 (*citing Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,

---

[14] In fact, PMF did not offer any explanation for submitting its revised Q&V response nine days late until nearly eight months later, after Commerce had published the Preliminary Determination.  *See* Phu My Flat's Clarification Letter, PD 197-199 (Aug. 19, 2019).  Plaintiffs categorically deny that this explanation constituted a request for extension.  Pl. Reply Br. at 15.

36 CIT 98, 122, 815 F. Supp. 2d 1342, 1365 (2012)).[15]  According to plaintiffs, it is inaccurate and unfair that "importers of merchandise produced by Phu My Flat, such as Plaintiff Ferrostaal, must now pay cash deposits of 24.22 percent . . . upon entry, even though there is zero evidence that Phu My Flat uses inputs produced in Korea for production of its cold-rolled steel products."  Pl. Br. at 18.  Plaintiffs allege that Commerce has a "minimal at best" interest in finality because PMF submitted its revised Q&V response three months prior to respondent selection and over seven months prior to the preliminary results.  Pl. Br. at 17.  Plaintiffs argue further that "Commerce failed to articulate any way in which Phu My Flat's nine-day delay impacted or delayed the respondent-selection decision it made three months thereafter."[16]  *Id.* at 11.

Plaintiff's reliance on *Grobest* is not persuasive.  That case is inapposite to the instant case in several key respects.

First, the Court in *Grobest* found that the respondent was "diligent" in correcting its untimely submission.  *Grobest*, 815 F. Supp. 2d at 1365, 1367.  The Court looked favorably on that respondent for filing the separate rate certification ("SRC") as soon as the respondent realized the omission and for sending a letter to Commerce shortly after

---

[15] In *Grobest*, the Court invalidated Commerce's rejection of an untimely separate rate certification ("SRC") in which a respondent filed the SRC 95 days late.  *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 125, 815 F. Supp. 2d 1342, 1367 (2012).

[16]  In this case, Commerce did explain the burden: "The Q&V questionnaire responses were used for purposes of respondent selection, and timely responses from all potential respondents was [sic] necessary in order for the respondent selection process to progress in a timely manner."  IDM at 14.

filing the SRC requesting that Commerce accept its late-filed submission.  *Id*.  In the

instant case, as noted, PMF did not explain its late submission or ask Commerce to

accept its late submission until after the publication of the Preliminary Determination.

Second, in *Grobest*, the respondent had already complied previously in three

segments of the proceeding and Commerce found no information on the record in any

of the prior segments indicating that the company's export activities were controlled by

the Vietnamese government.  *Grobest*, 815 F. Supp. 2d at 1366.  In the instant case,

there were no prior segments on the record of the proceeding and, therefore, there was

no record of PMF not using Korean substrate in its Vietnamese operations.

Finally, in *Grobest*, the untimely submission was a stand-alone occurrence.

*Grobest* at 1364-1365.  *Grobest* does not contain any facts indicating that there was a

noncompliant submission prior to the untimely SRC.  See *id*.  In the instant case, PMF

filed a noncompliant submission and then, after Commerce provided PMF with an

opportunity to remedy its deficient submission, PMF missed, without explanation, a

deadline to do so.

Commerce has a strong interest to ensure that its regulations are followed.  *See*

*Dongtai Peak*, 777 F.3d at 1351 ("In order for Commerce to fulfill its mandate to

administer the anti-dumping duty law . . . it must be permitted to enforce the time frame

provided in its regulations." (citing *Yangtai Timken Co. v. United States*, 31 CIT 1741,

1754, 521 F. Supp. 2d 1356, 1371 (2007)).  PMF failed to comply with Commerce

regulations — not once, but twice.  Accordingly, Commerce was reasonable in not

accepting PMF's original and revised Q&V responses.

**Application of Adverse Facts Available to Phu My Flat, Resulting in the
Preclusion of Phu My Flat From the Certification Process**

**LEGAL FRAMEWORK**

Commerce determines whether the use of facts otherwise available ("facts

available" or "FA") is proper under 19 U.S.C. § 1677e(a) ("section 1677e(a)").  *See* 19

U.S.C. §§ 1677e(a)-(b).  Section 1677e(a) states that Commerce may make

determinations on basis of facts available if:

> (1) necessary information is not available on the record, or

> (2) an interested party or any other person —

>> (A) withholds information that has been requested by the administering
>> authority . . .

>> (B) fails to provide such information by the deadlines for submission of the
>> information or in the form and manner requested, subject to subsections
>> (c)(1)[17] and (e) of section 1677m of this title,

>> (C) significantly impedes a proceeding under this subtitle, or

>> (D) provides such information but the information cannot be verified as
>> provided in section 1677m(i) of this title,

> the administering authority and the Commission shall, subject to section
> 1677m(d) of this title, use the facts otherwise available in reaching the applicable
> determination under this subtitle.

19 U.S.C. § 1677e(a).  If Commerce determines that the use of facts available is

warranted and that an interested party has not acted to the "best of its ability to comply

---

[17] 19 U.S.C. § 1677m(c) governs the conduct of Commerce in the event that an
interested party notifies Commerce that it is unable to submit the information in the
requested manner.  *See* 19 U.S.C. § 1677m(c).  This subsection is not at issue in the
instant case.

with a request for information," Commerce may apply AFA.  *See* 19 U.S.C. § 1677e(b)(1).

This Court has described the interaction of sections 1677e(a), 1677m(d) and 1677m(e) as follows: "The Department's use of facts otherwise available, therefore, generally requires that Commerce (1) find that the response to a request for information is deficient; (2) provide, when practicable, an opportunity to the party submitting the information to explain or correct the deficiency; and (3) determine whether such explanation or correction is either unsatisfactory or untimely."  *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 CIT 1398, 1402 (2011).

### DISCUSSION

Plaintiffs dispute Commerce's decision to apply AFA to PMF, which resulted ultimately in PMF's exclusion from the certification program.  Pl. Br. at 12.  Plaintiffs assert that the application of AFA to PMF was unreasonable based on two principal arguments.  The court addresses each in turn.

First, plaintiffs argue that there was no "gap" in the record to which Commerce could apply AFA.  Pl. Br. at 12.  In fact, there was a "gap" in the record — the lack of a Q&V response — because PMF failed to correct its original Q&V response by indicating appropriately and explaining BPI in accordance with Commerce's regulations by the deadline.  As such, the application of AFA was reasonable because there was a "gap" in the record and Commerce determined that PMF did not act to the best of its ability.

Plaintiffs' second argument is that the AFA applied by Commerce was not based on the record.  Pl. Br. at 27.  In fact, the AFA rate was based on record — namely, the

finding by Commerce that "CRS produced in the Socialist Republic of Vietnam (Vietnam) using carbon hot-rolled steel (HRS) flat products manufactured in Korea, is circumventing the AD and CVD orders on CRS from Korea."  IDM at 1.  Therefore, Commerce's selection of AFA is based on the record of the proceeding.

## I.      Gap in the Record

Plaintiffs argue that in order for there to be a "gap," to which Commerce may apply AFA, Commerce must have specifically requested the missing information that the application of AFA would address.  Pl. Reply Br. at 9, 12.  In the instant case, plaintiffs allege that for a gap to have existed in this case, Commerce would have needed to request information from PMF pertaining to its ability to source its substrate.  Pl. Reply Br. at 10.  Plaintiffs maintain that Commerce would have needed to take this step before Commerce could determine, as AFA, that PMF was using CRS made from Korean-origin sourced substrate, completed in Vietnam and then exported to the United States in circumvention of the CRS Orders.  *Id*.

Defendant counters that the "gap" is the absence of information on the record as to the quantity and value of PMF's imports of substrate from Korea stemming from PMF's failure to file a revised Q&V response by the required deadline.  Def. Resp. to Pls.' Mot. J. Agency R., ECF No. 53 ("Def. Br.") at 26-27.  Commerce maintained that obtaining this information was essential for Commerce to be able to determine which potential respondents to select as mandatory respondents.  IDM at 14.  Accordingly, defendant argues that this "gap" during the respondent selection stage justified

Commerce's decision to apply AFA and to disallow PMF from participation in the next stage of the proceeding, the certification program.  Def. Br. at 31-32.

The court determines that PMF's failure to respond in a timely manner to Commerce's Q&V questionnaire created a "gap" on the record because Commerce did not have information from PMF to use during the respondent selection stage.  Plaintiffs argue that Commerce was required to ask for the specific information (PMF's ability to source its substrate) to which Commerce would eventually apply AFA.  *See* Pl. Br. at 20.  The language of the statute and case law applying that language do not support this construct.  The statute provides that Commerce may make determinations using facts available if: (1) necessary information is not available on the record; or (2) an interested party withholds requested information, fails to provide information by the deadlines or in the form and manner requested, significantly impedes a proceeding or provides information that cannot be verified.  19 U.S.C. § 1677e(a).  The Federal Circuit has made clear that Commerce may not apply AFA when a respondent fully and accurately responds to Commerce's questionnaires.  *See Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 1572 (Fed. Cir. 1990).[18]  In the instant case, PMF did not

_____

[18] *Olympic Adhesives, Inc. v. United States* pertains to the second review of an antidumping order on animal glue imported from Sweden issued in 1977 by the Department of the Treasury (the agency responsible for antidumping investigations at that time shortly before the responsibility was transferred to Commerce).  *Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 1572 (Fed. Cir. 1990).  In its review, Commerce solicited information from the plaintiff, an importer, regarding the grades of the animal glue at issue.  *Id*. at 1569.  The plaintiff supplied Commerce with answers to all of its questions by forwarding telexes from its Swedish manufacturer.  *Id*.  Commerce then sent questionnaires directly to the Swedish manufacturer.  *Id*.  The Swedish

respond fully and accurately to Commerce's Q&V questionnaire.  Therefore, plaintiffs'

argument that the application of AFA to PMF was unreasonable and not in accordance

with law is without support.

Additionally, the SAA makes clear that the application of AFA is a tool given to

Commerce "to ensure that [a] party does not obtain a more favorable result by failing to

cooperate than if it had cooperated fully."  SAA, H.R. Doc. Rep. No. 103-316, vol. 1, at

870 (1994), *reprinted in 1994* U.S.C.C.A.N. 4040, 4198.  In the Q&V questionnaire,

Commerce notified the 31 companies that "failure to provide accurate information or to

cooperate to the best of your ability may result in [Commerce] resorting to the use of

facts available and adverse inferences within the meaning of section 776 of the Tariff

Act of 1930."  Commerce's Q&V Questionnaire, PD 17 (Oct. 5, 2018).  In the

Preliminary and Final Determinations, Commerce, applying AFA, determined that the

non-responsive companies were "not eligible to certify their entries and avoid paying

cash deposits because they are circumventing the Orders and had failed to fully

---

manufacturer informed Commerce that it could not answer questions concerning the
Swedish manufacturer's sales to the United States because the Swedish manufacturer
stopped producing animal glue, stopped selling to the United States and, as a result,
had no staff able to Commerce's questions.  *Id*. at 1569-1570.  When Commerce put a
92.72% duty on the animal glue, plaintiff sued asserting that Commerce did not notify
the Swedish manufacturer that its answers were deficient.  *Id*. at 1570.  The Federal
Circuit held that Commerce "may not properly conclude that resort to the best
information rule is justified in circumstances where a questionnaire is sent and
completely answered, just because [Commerce] concludes that the answers do not
definitely resolve the overall issue presented."  *Id*. at 1574.  The Federal Circuit
continued, "section 1677e(b) clearly requires *noncompliance with an information
request* before resort to the best information rule is justified. . . ."  *Id*. (emphasis in
original).  The Federal Circuit concluded that Commerce needed to give notice of a
deficiency.  *Id*.

participate in Commerce's inquiries."  Def. Br. at 5 (*citing* IDM at 19).  Commerce

explained that if AFA were not applied, and if the non-responsive companies were

allowed to certify their entries after their failure to submit useable Q&V responses, the

companies "would be able to avoid certain immediate costs and inconvenience by

ignoring Commerce's requests for information while having no reason to fear any

specific future negative consequences from their unwillingness to cooperate."  IDM at

29.  In fact, Commerce attributes the relative lack of Q&V responses in the proceeding

in the instant case to Commerce's leniency in the *China CRS Circumvention* anti-

circumvention inquiry in which Commerce allowed non-responsive companies to

participate in the certification process.  *Id*. at 27; *see also Certain Cold-Rolled Steel Flat*

*Products From the People's Republic of China: Affirmative Final Determination of*

*Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg.

23,891 (Dep't Commerce May 23, 2018) ("*China CRS Circumvention*").

　　　　Plaintiffs' second argument is that there is no record that PMF is using substrate

produced in Korea and, therefore, Commerce's application of AFA is uncorroborated

and not in accordance with law.  Pl. Br. at 27.  Plaintiffs, relying on a comparison to

*Trina Solar*, argue that "Commerce disregarded its obligation to point to any facts on the

record to support its determination that Phu My Flat does not have the ability to trace its

exports or the HR substrate it uses to produce CRS."  *Id*. at 28.  In *Trina Solar*, the court

determined that "Commerce [had] placed no relevant factual information on record, and

so cannot even rely on the low bar set by 19 U.S.C. § 1677e(b)(2)(D) — that its adverse

inferences be derived from 'any other information placed on the record.'"  *Changzhou*

*Trina Solar Energy Co., Ltd. v. United States*, 40 CIT __, __195 F. Supp. 3d 1334, 1348

(2016).  The court continued, "Commerce has not indicated that it relied on any

information, from any source, to find that all of the Solar I PRC programs and

verification grants and tax deduction satisfy the elements for countervailability."  *Id*.

Plaintiff fails to recognize a fundamental difference between the instant case and

*Trina Solar*.  In the instant case, the application of AFA was based on information

contained in the record of the proceeding.  PDM at 13; IDM at 7.  After a review of the

mandatory respondents, Commerce determined that "CRS produced in the Socialist

Republic of Vietnam (Vietnam) using carbon hot-rolled steel (HRS) flat products

manufactured in Korea, is circumventing the AD and CVD orders on CRS from Korea."

*Id*.  PMF's information was not a part of the record due to PMF's failure to submit a

revised Q&V response by the deadline.

As a final argument, plaintiffs assert that the application of AFA to PMF was

unreasonable because PMF did not, in essence, *intend* to evade Commerce's inquiry.

Pl. Br. at 26.  Plaintiffs note that PMF's behavior of submitting a timely, but

noncompliant response with regard to BPI, and then an untimely, but compliant

response with regard to BPI, is not indicative of PMF "attempting to obtain a more

favorable result in this proceeding."  Pl. Br. at 26.

To assess whether a respondent in an investigation or review acted to the best of

its ability, it is well established that intent is irrelevant.  *Nippon Steel Corp. v. United*

*States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003) ("The statutory trigger for Commerce's

consideration of an adverse inference is simply a failure to cooperate to the best of

respondent's ability, regardless of motivation or intent.").   Therefore, this argument is unsuccessful.

In sum, PMF created a "gap" in the record when it failed to correct its "deficiency" and provide Commerce with a timely revised Q&V response.   Commerce acted reasonably to apply AFA to PMF, bar PMF from participating in the certification program and determine that PMF was circumventing the Orders.

## II.      Plaintiffs' Additional Arguments

Plaintiffs offer several additional arguments as to the reasons that, in plaintiffs' view, it was not reasonable for Commerce to apply AFA to PMF.   The court addresses them briefly.

Plaintiffs argue that PMF's untimely Q&V response did not hinder Commerce's inquiry because it was a foregone conclusion that the two largest producers would be selected for respondent selection instead of PMF — and in fact, that is what Commerce did.   *See* Pl. Br. at 19 n.4.[19]   Commerce reasonably stated that "timely responses from all potential respondents was [sic] necessary in order for the respondent selection process to progress in a timely manner."   IDM at 14.   It is well established that "[i]t is Commerce, not the respondent, that determines what information is to be provided for an administrative review."   *Ansaldo Componenti, S.p.A. v. United States*, 10 CIT 28, 37, 628 F. Supp. 198, 205 (1986).   Plaintiffs may not justify noncompliance with

---

[19] Plaintiffs add that, in their view, PMF's failure to respond had no impact on the investigation.   Tr. at 48, ¶¶ 14-17.

Commerce's Q&V questionnaires by maintaining that Commerce did not actually need PMF's cooperation as a smaller producer; such an approach would sanction non-participation by any respondent that, it turned out, was not one of the two largest.

Plaintiffs also express discontent that it took two months for Commerce to reject PMF's original Q&V response and another two months to reject PMF's revised Q&V response.  Pl. Br. at 16.  At oral argument, plaintiffs questioned whether Commerce's notice was prompt in light of the language of section 1677m(d) that Commerce "shall promptly inform."  Tr. at 10, ¶¶ 9-12; Tr. at 12, ¶¶ 2-6.  When pressed, plaintiffs conceded that they are not aware of a definition under the statute or regulations for "promptly" and that their point was to suggest that PMF's nine-day delay was "a pittance compared to the two months and the two months."  Tr. at 12, ¶¶ 17-25.

Plaintiffs' counsel raises a series of what could be characterized almost as equitable arguments: *e.g.*, PMF filed a noncompliant document and missed a deadline without explanation or request for extension, but Commerce took two months in each case to render its decision, Tr. at 12, ¶¶ 2-9; PMF did not appear to be trying to hiding the ball, *see* Pl. Br. at 26; there was no harm or even impact on the investigation in PMF not responding in this case because PMF is a smaller company.  Tr. at 14, ¶¶ 13-15. The court has listened to and understood these arguments.  However, as the foregoing indicates, the court's mandate is to review whether Commerce's decision is unsupported by substantial evidence or otherwise not in accordance with law.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).  There is no basis in the statute to address these arguments. *Id*.

In light of the foregoing, the court concludes that Commerce applied the statutes and its regulations reasonably in its determinations with regard to the rejection of the Q&V responses and the application of AFA.

## CONCLUSION

In the 1996 movie, Fargo, police officer Marge Gunderson (portrayed by Frances McDormand, who took home her first of three (so far) Academy Awards for Best Actress in a Leading Role), turns up unannounced at the car dealership run by Jerry Lundegaard (William H. Macy). She is searching for a missing vehicle. She walks into Lundegaard's office — scene played to comic-dramatic perfection by McDormand and Macy — the scene's and film's underlying narrative bearing slim relationship to the facts of the case before the court.

Marge: "Sorry to bother you, again." She is well into his office: "May I come in?"

Jerry: "Yeah…no! I'm kinda . . . I'm kinda busy here," he stammers, pained expression on his face.

She sits down across from him.

Marge: "Mind if I sit down? I was kinda wondering . . ."

Jerry: "Like I told ya, we haven't had any vehicles go missing."

Marge: "Okay!" she says, chipper, smile on her face. Pauses, looks down. "Are ya sure? So how do ya – have ya done any kind of inventory recently?"

Jerry: "The car's not from our lot, ma'am."

Marge: "But do ya know that for sure without . . ."

Jerry: "Well, I would know! I'm the Executive Sales Manager."

Marge: "Yah, but . . ."

Jerry: "We run a pretty tight ship here."

Marge: "I know but . . . well, how do ya establish that, sir?  Are the cars, uh, counted daily or what kind of . . ."

Jerry, voice raised: "Ma'am! I answered your question."

Marge, pauses, eyes wide, serious, stares at him with a look that could stop a charging Rhino: "I'm sorry, sir?"

Jerry, quieter, smiling: "I answered your question.  I answered the darn. . . .  I'm cooperating here. . . .   I'm not. . . ."

Marge, death stare continuing: "You got no cause to get snippy with me.  I'm just doin' my job here."

Jerry: "I'm not arguin' here.  I'm not, uh . . .  I'm cooperatin' . . .  And, there's no . . . .  We're doin' all we can."

Marge, stands, over him, her eyes still boring into him: "Sir, could I talk to Mr. Gustafson?"  Gustafson owns the car dealership, is Jerry's boss and father-in-law of whom he is terrified.  Jerry looks up at her, deer in the headlights.  Silence.  She says, quietly: "Mr. Lundegaard?"

Jerry gets up, yanking his parka from the hook, grabbing his hat and scarf and slipping on his galoshes: "Well, heck!  If you wanna. . . if you wanna play games here. . . I'm workin' with ya on this thing here, but . . . okay . . . I . . . I'll do a [damn] lot count!"

Marge, staring out the window at the snow and freezing lot: "Sir, right now?!"

Jerry: "Yah, right now!  You're darned tootin'!"[20]

* * *

In conclusion, Commerce's decision to reject PMF's Q&V responses was reasonable and in accordance with law.  Commerce requires that companies participate and comply with its regulations to conduct its anti-circumvention inquiries.  PMF failed twice to provide Commerce with the information it required in the manner in which Commerce required it.  As such, Commerce's application of AFA was also reasonable and in accordance with law.  Therefore, the court sustains Commerce's Final Determination.  Judgment will enter accordingly.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:   May 4, 2021
         New York, New York

---

[20] FARGO (Joel Coen and Ethan Coen/Gramercy Pictures 1996).